John Allen Curtis
Law Office of John Allen Curtis
3701 W. Northwest Highway, Suite 169B
Dallas, Texas 75220
Telephone: 214-352-6666
Fax: 214-352-7051
E-Mail: jacurtis@sbcglobal.net

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SAFETY LINK INTERNATIONAL, INC. | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CASE NO. 4:08cv415 |
| | § | |
| BRUCE BOYCE, Individually, and | § | |
| MANUFACTURER DIRECT, LTD. | § | |
| Defendants | § | |

PLAINTIFF'S MEMORANDUM
IN RESPONSE TO DEFENDANT'S MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiff asks the Court to deny Defendant's motion to dismiss for lack of personal jurisdiction.

Introduction

1. Plaintiff is SAFETY LINK INTERNATIONAL, INC.; Defendants are BRUCE BOYCE, Individually, and MANUFACTURER DIRECT, LTD.

2. Plaintiff sued Defendants for Trade Secret Misappropriation, Patent Infringement, Trademark Infringement, Tortuous Interference with Contracts, and Breach of Fiduciary Duty.

3. Defendants filed a motion to dismiss and asked the Court to dismiss Plaintiff's suit for lack of personal jurisdiction.

4. Plaintiff files this response asking the Court to deny Defendant's motion.

## Argument

5. The Court should deny Defendants' Motion to Dismiss because Defendants' activities are within the reach of state (Tex.Civ.P & Rem. Code § 17.042), and federal long-arm statutes (FRCP 4(k)(2); 28 U.S.C. §§ 1332 and 1338) and service of process is authorized on Defendants. *Portnoy v. Defiance, Inc.*, 951 F.2d 169, 171 (8th Cir. 1991). *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). This case rests in the jurisdiction of the United States District Court, as Congress has vested federal courts with exclusive jurisdiction over certain actions, one of which is patent and copyright causes under 28 U.S.C. §1338. Any federal court may exercise personal jurisdiction over any defendant against whom a claim arising under federal law is made if that defendant is not subject to personal jurisdiction in any state. FRCP 4(k)(2). *See Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir. 2004). FRCP 4(k)(2) is a special-purpose long-arm law, akin to state long-arm statutes, that authorizes extraterritorial jurisdiction whenever its exercise would be sonsistent with the requirements of due process, as long as the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any state. *Id.* @ 650-51. *See also Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005). The purpose of FRCP 4(k)(2) is to permit a court to consider, in federal-question cases, a defendant's national, rather than state, contacts. *See Submersible Sys. V. Perforadora Cent.*, 249 F.3d 413, 420 (5th Cir. 2001). In *U.S. v. Swiss Am. Bank., Ltd*, 191 F.3d 30, 41 (1st Cir. 1999), the First Circuit rejected the traditional approach that the plaintiff must negate the availability of jurisdiction in all 50 states, and instead crafted a simplified test whereby the plaintiff must allege only that the defendant is not subject to the jurisdiction of any one state and show that the defendant's contacts with the nation as a whole satisfy constitutional requirements. See Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283

F.3d 208, 215 (4th Cir. 2002); ISI Int'l v. Borden Ladner Gervais LLP, 256 F.3d 548, 552 (7th Cir. 2001); See also Adams, 364 F.3d at 651 (as long as Defendant does not concede jurisdiction in another state, court may use FRCP 4(k)(2) to confer jurisdiction).

6. A court has personal jurisdiction over a defendant who is served according to a federal statute. FRCP 4(k)(1)(C). The Defendants herein were served pursuant to the Hague Convention for service of Defendants from a foreign jurisdiction. When a federal court attempts to exercise personal jurisdiction over a defendant in a suit based on a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has sufficient contacts with the United States as a whole. *Adams*, 364 F.3d 646, 650 (5th Cir. 2004).

7. Specific jurisdiction may be based on Internet contacts when the defendant-website operator (1) directly targets the website to the forum state, (2) knowingly conducts business with the forum state's residents through the website, or (3) has sufficient related non-Internet contact with the forum state's residents. *Toys "R" Us., Inc. v. Step Two, S.A.*, 318 F.3d 445, 454 (3d Cir. 2003); see Neogen Corp. v. Neo Gen Screening, nc., 282 F.3d 883, 890-91 (6th Cir. 2002); see also AST Sporlts SWci., Inc. v. CLF Distrib., Ltd., 514 F.3d 1054, 1059 (10th Cir. 2008) (modern communications can eliminate need for physical presence in forum). Many courts have held that a court's ability to exercise personal jurisdiction is directly proportional to the nature and quality of the commercial activity the defendant conducts on the Internet, adopting the flexible "sliding-scale' approach first set out in *Zippo Mfg. v. Zippo Dot Com., Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997). Under *Zippo*, the more interactive a website is, the more it weighs in favor of the exercise of jurisdiction. *See Zippo*, 952 F.Supp. at 1124.

8. In *Autobytel, inc. v. Insweb Corporation*, (E.D. Tex. 3-31-2009), the District Court stated: "The minimum contacts aspect of the analysis can be established through contacts

that give rise to specific personal jurisdiction or general personal jurisdiction. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.23d 1275, 1279 (Fed. Cir. 2005). Specific jurisdiction requires that the plaintiffs' claims arise from or relate to the defendant's contact with the forum. *Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). With respect to specific jurisdiction in a patent infringement case, the Federal Circuit employs a three-prong test: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair. *Avocent Huntsvill Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008). Furthermore, minimum contacts is established for a corporation 'that delivers its products into the stream of commerce with the expectation that they will be purchased by customers in the forum state.' *Avocent*, 552 F.3d at 1331 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). General jurisdiction 'requires that the defendant have continuous and systematic contacts with the forum state,' and that such activity will 'confer [] [general] personal jurisdiction even when the cause of action has no relationship with those contacts.' *Avocent*, 552 F.3d at 1331." (*Autobytel*, pages 2 and 3). In Daimler-Benz Aktiengesellschaft v. Olson, 21 S.W.3d 707, 723-24 (Tex.App. – Austin, 2000, pet. dism'd w.o.j.), the court stated that a nonresident corporation would subject to Texas jurisdiction due to the distribution agreement that "directly align[ed} [Texas distribution company's] interests with [foreign company's] interest in maximizing the sales of its vehicles in the U.S." In entering into a distribution agreement or agency agreement with Plaintiff, the Defendants have directly aligned their interests with the Plaintiff in maximizing the sales of Plaintiff's products in the U.S. and Canada. This has further been demonstrated by the U.S. distributors, especially the Texas distributor, that Defendants are selling the products which were developed by Plaintiff.

9. Defendants have maintained more than minimal contacts with the State of Texas and within the United States, including availing themselves of a particular forum through advertising, establishing channels of regular communications to customers in Texas, and delivering its products into the stream of commerce with the expectation that the products will be purchased by consumers in the forum state. In the Eastern District of Texas, the U.S. District Court in *ATEN International Co. Ltd. v. Emine Technology Co.* (E.D. Tex. 6-25-2009), citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980), addressed the issue of delivering products into the stream of commerce in establishing minimal contacts with the forum state. The District Court referred to *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987), which stated: "the Supreme Court reiterated that the stream of commerce theory provides a valid basis for finding minimum contacts. However, the Court split as to the exact requirements of applying the theory. *See id. at 112, 117.* Four Justices of the Court adopted the view that a defendant must both place a product in the stream of commerce and take some action to purposefully direct that product toward the forum state. *See id. at 112.* The other four Justices adopted the view that a showing of additional action aside from placing the product in the stream of commerce was not necessary. *See id. at 117.*" "The Federal Circuit applied the stream of commerce theory in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, See 21 F.3d 1558, 1566 (Fed.Cir. 1994). The Federal Circuit emphasized that 'if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the [defendants] to serve, directly or indirectly, the market for its product . . . , it is not unreasonable to subject it to suit.' *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 297). However, instead of adopting one of the two versions of the stream of commerce theory laid out by the Supreme Court in *Asahi*, the Federal Circuit stated, ' We need not join in this debate here,

since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing.' *Id.; see also commissariat A L'Energie Atomique v. Chic Mei Optoelectronics Corp.*, 395 F.3d 1315, 1321 (Fed.Cir. 2005) (declining to resolve the *Asahi* split.)" Further in their opinion, the Eastern District Court stated: "The Court again finds it unnecessary to resolve the *Asahi* split . . ." The Court then cites *GSK Tech., Inc. v. Schneider Elec., S.A.*, 6:06-cv-361, 2007 WL 788343 at *2 (E.D. Tex. March 14, 2007) (Davis, J.). In this case the Court found that evidence of sale of defendant's products into a nation-wide distribution network along with evidence that the products were available in Texas amounted to a prima facie showing of purposeful entry into the Texas stream of commerce.

10.     The Defendants have a highly interactive Internet store, advertising on well-known Internet search engines and other websites, making substantial sales as an electronic retailer in Texas. Defendants' website (www.mdltd.ca) can be reached from any place within the United States, including Texas. On this website, the Defendants have an online catalog which allows anyone to purchase the "Wheel Nut Management System," which is the subject of this suit. Further, if you wish to contact a local distributor, a listing of such distributors is found on the website, including a distributor in Carrollton, Texas 75006, which is less than 50 miles from the Plaintiff's corporate offices. Part of the interactive website, is a section on each part that is available for purchase, with a video telling you all about the part and how it works. A flyer for the "Wheel Nut Management System" also includes the telephone numbers for Manufacturer Direct™, as well as a confirmation of the website address. Defendants are soliciting business and selling products through dealers in the forum state of Texas. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 573 (2nd Cir. 1996). Further, Defendants have and are employing salesmen who live within Texas (the local distributor), but limit their authority to

exhibiting samples of merchandise and soliciting orders from prospective buyers inside and outside the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 157-60 (1945). Under the above showing, Plaintiff has presented a prima facie showing that Defendants placed their products into the stream of commerce with knowledge and an intention that they be sold in Texas. *See Asahi*, 480 U.S. at 117 (noting that jurisdiction is proper when the flow of products into the forum is "regular and anticipated" and more than "unpredictable currents or eddies").

11. The Court should deny Defendants' Motion to Dismiss because the Defendants purposefully availed themselves of the benefits and protections of the laws of the forum state. *See Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996). As part of the incident that gave rise to this suit, Defendants maintain a highly interactive Internet store that allows for the purchase of Defendants' products from the state of Texas, and it has a local distributor within the State of Texas, within 50 miles of the headquarters of the Plaintiff. Further, "the fiduciary shield doctrine does not protect a corporate officer or employee from the . . . exercise of specific jurisdiction as to torts for which the officer or employee may be held individually liable." *Stern v. KEI Consultants, Ltd.*, 123 S.W.2d 482, 485 (Tex.App. – San Antonio 2003, orig. proceeding). Defendant Boyce has committed torts in this matter, which the Court may hold him individually liable. Therefore, the Court has specific jurisdiction over Defendants. (See Affidavit of James Adams in Support of Plaintiff's Response.)

12. The Court should deny Defendants' Motion to Dismiss because the Defendants engaged in continuous and systematic activity in the forum state. *See Metropolitan Life*, 84 F.3d at 567-68. In particular, Defendants contracted with and made routine sales to and through a

company located in the forum state. Thus, the Court has general jurisdiction over Defendants. The Defendants have a local distributor within 50 miles of the headquarters of the Plaintiff, who solicit orders from residents and businesses within the State of Texas. Such orders are then referred to Defendants headquarters for processing and shipping to customers within Texas. This activity, when combined with the previously noted actions of the Defendants show the intentions of the Defendants to continue the past behavior and expand its operations and territory beyond the limits of Canada.

13. The Court's assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and will be consistent with the constitutional requirements of due process because Defendants have derived financial benefit from doing business in Texas and have enjoyed the protection of the Texas' laws. {*See Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 207 (5th Cir. 1996); *Metro. Life, 84 F.3d at 568.* In *Aten International Co. Ltd. v. Emine Technology Co.* (E.D. Tex. 6-25-2009), the Court further stated: "It is well recognized that modern communication and transportation have made defending a lawsuit in a foreign tribunal less burdensome. *See World-Wide Volkswagen*, 444 U.S. at 294. The State of Texas has a significant interest in preventing patent infringement within its borders. *See Beverly Hills Fan*, 21 F.3d at 1568 ("[The forum sate] has an interest in discouraging injuries that occur within the state."). Further, Texas has an interest in furthering commerce and scientific development, especially within its technology sector, which is promoted by patent laws."

14. In the alternative, if the foregoing is insufficient to deny the Defendants Motion to Dismiss, Plaintiff requests that it be allowed to conduct jurisdictional discovery of facts to support personal jurisdiction and would allow the Plaintiff to supplement its jurisdictional

allegations. *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005). The court should give the plaintiff an opportunity to discovery jurisdictional facts so it can establish jurisdiction over the defendants. *See Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008); *Toys "R" Us, Inc. v. Step Two, S.A.* 318 F.3d 445, 456 (3d Cir. 2003); *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513 (D.C. Cir. 2002); *First City v. Rafidain Bank*, 150 F.3d 172, 175 (2d Cir. 1998); *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981).

15. The Plaintiff herein, if granted an opportunity to engage in jurisdictional discovery would be in a position to verify and confirm the contacts and sales that Defendants have made in the United States, and to customers that originally were customers of Plaintiff.

## Conclusion

16. Defendants' actions of maintaining a distributor for the sale of Defendants' products within the State of Texas and maintaining an interactive Internet Store which can be accessed through regular internet connections, which introduces its products into the stream of commerce in Texas, are minimum contacts with the forum state, through a continuous and systematic activity. Furthermore, the Court's assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and will be consistent with due process of law. For these reasons, Plaintiff asks the Court to deny Defendants' Motion to Dismiss and to retain the case on the Court's docket.

Respectfully submitted,

*[signature]*

John Allen Curtis
Texas State Bar No. 05285000
3701 W. Northwest Highway, Suite 169B
Dallas, Texas 75220
Telephone: 214/352-6666
Fax: 214/352-7051
E-Mail: jacurtis@sbcglobal.net

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that on the 30th day of June, 2009, the undersigned electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which shall send notification to all parties of record by operation of the Court's electronic filing system.

*[signature]*

John Allen Curtis